[Civ. No. 43860. First Dist., Div. One. Mar. 19, 1981.]

ROBERT A. NELSON et al., Plaintiffs and Appellants, v.
JAMES R. OROSCO et al., Defendants and Appellants.

COUNSEL

Cadoo, Tretheway, McGinn & Morgan and Robert J. Reamer for Plaintiffs and Appellants.

Watson & Hoffe, R. Bruce Hoffe and M. Jeffrey Micklas for Defendants and Appellants.

OPINION

**ELKINGTON, Acting P. J.**—Plaintiffs Robert A. Nelson and Sandra M. Nelson (hereafter for convenience in the singular, Nelson) appeal from a judgment declaring that they take nothing by way of a deficiency, after a judicial foreclosure sale of real property, from defendants

James R. Orosco and Annette M. Orosco (hereafter for the same reason, Orosco). Orosco cross-appeals from an order setting aside the foreclosure sale on Nelson's motion.

■ In our analysis of the appeals we initially observe that an action to foreclose on the security of a trust deed under Code of Civil Procedure section 726 is a proceeding in equity. (*Chance v. Superior Court* (1962) 58 Cal.2d 275, 291 [23 Cal.Rptr. 761, 373 P.2d 849]; *Cummins v. Bank of America* (1941) 17 Cal.2d 846, 849 [112 P.2d 593]; *Lawrence v. Oakes* (1931) 117 Cal.App. 32, 35-36 [3 P.2d 334].) In such a proceeding the court will exercise "broad powers" in shaping its decree (*Cummins v. Bank of America, supra*, 17 Cal.2d at p. 849) to "afford complete relief as between the parties" (*Lawrence v. Oakes, supra*, 117 Cal.App. at pp. 35-36); it will act "in a manner ensuring maximum possible protection to the rights of all concerned" (*Chance v. Superior Court, supra*, 58 Cal.2d at p. 291).

We observe the following uncontroverted evidence of the record.

Orosco had purchased residential, "Canyon Road," property from Nelson, and as part of the purchase price delivered to Nelson his promissory note for $111,424.09. The promissory note was secured by a second trust deed upon another residence owned by Orosco, the "Happy Valley Road" property. Orosco had "requested [of Nelson] that the property that secured that note be the subject property in this litigation, to wit: [the Happy Valley Road property]" (hereafter the property).

Following the above-noted transaction Orosco entered into a contract to sell the property to one Woodburn who forthwith entered into possession of it. Woodburn had financed the transaction in part by assuming a $100,000 first trust deed indebtedness and lien against the property. The contract of sale made no mention of Nelson's second trust deed.

Orosco thereafter defaulted on the obligation of his promissory note, and Nelson commenced an action for foreclosure of the second trust deed security of the property. Orosco also defaulted in the action, and judgment was entered against him.

The judgment determined the amount of principal and interest, plus attorney fees, then due Nelson to be $67,116.35, and confirmed a lien for that amount under his second trust deed. The property was ordered

to be sold by a court commissioner with the net purchase price to be applied toward Orosco's indebtedness, with a deficiency judgment against Orosco, if any, to be rendered "on proper application therefor and as authorized by law."

Following entry of the above-noted judgment, and before its directed foreclosure sale, *Woodburn* commenced an action against Orosco *and* Nelson. The theory of the action was that Orosco had falsely "failed to disclose and omitted the fact that the title was subject to a purported lien and encumbrance" of Nelson. Woodburn's action sought specific performance of the sale agreement by Orosco, free and clear of the "purported lien and encumbrance" of Nelson, and damages of $130,000 against Orosco *and* Nelson. (No contention was, or is, made in the instant action by Orosco that Nelson was involved in any way in the dealings with Woodburn.) And Woodburn had caused a notice of the pendency of his action to be recorded.

Thereafter at the foreclosure sale, there for obvious reasons being no other bidders, Nelson purchased the property for $1,000 over and above the existing first trust deed encumbrance of $100,000.

Following the foreclosure sale and as permitted by the earlier judgment, Nelson made "proper application [for a deficiency judgment] as authorized by law," i.e., Code of Civil Procedure section 726. At that point, although his default had been entered in the action, Orosco was allowed to oppose the deficiency judgment on the ground that section 726 limited "a deficiency judgment to the *difference* between the *total debt* and the *fair value* of the property at the date of sale, ..." (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Security Transactions in Real Property, § 116, pp. 1584-1585.) Three expert witnesses at the hearing testified, respectively, that the property had a fair market value of $120,000-$140,000, $95,000-$108,000, and $180,000. In reaching their appraisals, *none* had considered the effect of the Woodburn action, or its lis pendens, or the fact that he was unlikely consensually to give up possession of the property to any buyer at the foreclosure sale. At the hearing Nelson had raised such issues, and had unsuccessfully offered a stipulation that the foreclosure sale be set aside and that another such sale be held.

The trial court nevertheless found the property's fair market value at the time of the foreclosure sale to have been $180,000. Judgment was

entered that Nelson recover nothing from Orosco by way of a deficiency. It is from that judgment that Nelson has appealed.

The superior court, in addition to finding the property's fair market value to be $180,000 at the time of the foreclosure sale, made the following findings of fact.

Title to the property on the day of the foreclosure sale was clouded because of the following circumstances: Orosco had previously entered into a contract to sell the property to Woodburn without mention of Nelson's second trust deed thereon. Woodburn, in possession of the property, had filed an action (with an accompanying lis pendens) claiming that Orosco and Nelson had maliciously and fraudulently arranged to further encumber the property to Nelson to the injury of Woodburn, who sought the extinction of the Nelson trust deed, and to prevent the property's sale by the foreclosure action, or otherwise.

As a conclusion of law from these facts the court ruled that under Code of Civil Procedure section 726 no deficiency judgment was legally permissible.

Following entry of that judgment and his notice of appeal therefrom, Nelson moved for an order setting aside the foreclosure sale. Another hearing was held, following which the court (by the same judge), obviously entertaining second thoughts about its earlier order, directed that the foreclosure sale be set aside. Orosco has, as noted, appealed from the order setting aside the foreclosure sale.

 We consider first Nelson's appeal from the judgment denying a deficiency against Orosco after the foreclosure sale.

We become concerned with the legislatively intended meaning of Code of Civil Procedure section 726's phrase (3d par.) "fair value of the property or the interest therein sold as of the date of sale, ..."

Orosco contended, and the trial court presumably believed, that it was *the price a willing purchaser would pay to a willing seller in an open market* (see *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 623 [184 P.2d 879]) *if the title to the property was unclouded and clear.*

Nelson, on the other hand, argued that under the circumstances of Woodburn's pending lawsuit, recorded lis pendens, and contention that Nelson's second trust deed and thus a foreclosure sale under it were invalid, *no willing purchaser would pay $180,000 for the property on such a sale.*

Manifestly, no willing purchaser in an open market would have paid the full $180,000 for the property under the circumstances of Woodburn's recorded claim. Such a buyer would take the property subject to the expense and vicissitudes of a lawsuit which *could* result in the purchaser obtaining nothing at all for the price he had paid.

The circumstances that attended the instant foreclosure sale are, fortunately, rare, and we find little relevant judicial authority. █ But we note the following: The meaning of "fair market value" varies with the circumstances and situations to which the term is applied. (*John W. McDougall Company* v. *Atkins* (1957) 201 Tenn. 589 [301 S.W.2d 335, 337].) It is "determined by all the available circumstances" (*Eastern S. S. Lines* v. *United States* (D.Mass. 1947) 74 F.Supp. 37, 38 [affd. 171 F.2d 589]), and after "'taking into account all considerations that fairly might be brought forward and reasonably given substantial weight in ... bargaining'" (*Edgcomb Steel of New England* v. *State* (1957) 100 N.H. 480 [131 A.2d 70, 76]).

█ As noted, the critical situation here, unconsidered by the trial court, was the clouded and patently unmerchantable condition of the property's title.

We are of the opinion that the legislative intent behind the enactment of Code of Civil Procedure section 726 was that its "fair value" was to be determined by all of the circumstances attending the property at a foreclosure sale, including the state of its title and merchantability. Such statutes will be construed "so as to make them workable and reasonable." (*City of Santa Clara* v. *Von Raesfeld* (1970) 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d 976].) And we find it fair to iterate that the trial court upon further consideration seemed to have reached the same conclusion.

It follows that the trial court having erroneously interpreted section 726 to the prejudice of Nelson, the judgment declaring that he take no deficiency must be reversed.

■ We proceed now to the appeal of Orosco from the order setting aside the foreclosure sale on Nelson's motion.

Here, Orosco's initial contention is that by virtue of Nelson's pending appeal from the earlier order denying a deficiency judgment, the trial court under Code of Civil Procedure section 916 was deprived of jurisdiction to determine his later motion to set aside the foreclosure sale.

Code of Civil Procedure section 916, subdivision (a), as relevant to the case at hand provides that the "perfecting of an appeal stays proceedings in the trial court upon the ... order appealed from or upon the matters embraced therein *or affected thereby*, ..." (Italics added.)

The order denying Nelson a deficiency judgment, had it become final, would have forever denied him such relief. The later order setting aside the foreclosure sale had the effect of permitting another such sale, with the attendant right granted by Code of Civil Procedure section 726 to a deficiency judgment upon a bid of less than the property's fair market value. It thus becomes manifest that the trial court's second order setting aside the foreclosure sale "*affected*" its first order denying a deficiency judgment. Upon the first appeal, proceedings upon Nelson's second motion were stayed by operation of the statute.

The order setting aside the foreclosure sale will accordingly be reversed.

But for the lack of jurisdiction resulting from the application of Code of Civil Procedure section 916, subdivision (a), we could reasonably express no disagreement with the trial court's findings of fact on Nelson's motion to set aside the foreclosure sale.

Upon remand, the superior court will exercise its broad equitable powers to the end that it shall, as noted, afford complete relief as between the parties. If the court shall determine that the problems and uncertainties attending the foreclosure sale were brought about by Orosco without substantial fault on Nelson's part, it will exercise those powers, where reasonably possible, to insure that Nelson be made whole.

The judgment of January 24, 1978, that plaintiffs Robert A. Nelson and Sandra M. Nelson take nothing by way of a deficiency is reversed.

The order of May 16, 1978 "(regarding motion to set aside foreclosure sale of real property)" is reversed. Plaintiffs Nelson will recover their costs of the appeals.

Newsom, J., and Grodin, J., concurred.

A petition for a rehearing was denied April 15, 1981, and the petition of defendants and appellants for a hearing by the Supreme Court was denied May 13, 1981.