952 F.2d 406
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Melvin Memphry CARTER, Plaintiff-Appellant,
v.
BEVERLY HILLS FEDERAL SAVINGS BANK and Southland Company,
Defendants-Appellees.
 No. 91-55029.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1991
Decided Jan. 9, 1992.
 
 1
 Before SCHROEDER and KOZINSKI, Circuit Judges, and REED, District Judge*
 
 
 2
 MEMORANDUM**
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Plaintiff, a debtor who had defaulted on mortgage payments to Defendant-Appellee Beverly Hills Savings Bank ("Beverly Hills"), sued Beverly Hills and one of its agents, Defendant-Appellee Southland Company, on many theories related to the Defendants' foreclosure on the Plaintiff's property.
 
 
 4
 From August 20, 1982 to January 26, 1983 Plaintiff filed four consecutive bankruptcy petitions under Chapter 13 in an effort to delay the foreclosure. The automatic stay under each bankruptcy kept the Defendants from foreclosing on the Plaintiff. The first three petitions were quickly dismissed by the bankruptcy court. While the fourth petition was still active, Plaintiff and Defendants agreed to a written stipulation in open court to lift the automatic bankruptcy stay that kept Beverly Hills from foreclosing. The bankruptcy judge approved the stipulation and signed it.
 
 
 5
 In addition to lifting the automatic stay, the stipulation required the Plaintiff to make certain minimum interim payments (termed "post-petition payments," "payments on the post-petition arrearages," and "plan payments"). If the Plaintiff defaulted on any of these interim payments, Defendants had the right to give notice of breach of the stipulation and foreclose soon after.[1] In any event, Defendants had an absolute right to foreclose any time after July 15, 1983, unless the Plaintiff cured all mortgage defaults ("arrearages") and reinstated the loan. Plaintiff claims he tried to make some of the minimum interim payments, but admits that he was never in a position to cure all past arrearages and reinstate the loan.
 
 
 6
 On August 9, 1983, pursuant to the terms of the stipulation, Beverly Hills informed Plaintiff by formal written notice that his property would be sold at foreclosure. Plaintiff then filed a fifth bankruptcy petition in an attempt to procure a new stay. However, the stipulation explicitly prohibited all future bankruptcy stays. The property was sold at foreclosure in September of 1983.
 
 
 7
 Plaintiff did not leave the property until forced to do so after losing an unlawful detainer action. At the unlawful detainer action Plaintiff unsuccessfully argued that Beverly Hills' action under the stipulation violated the automatic bankruptcy stay and that Beverly Hills breached the terms of the agreement.
 
 
 8
 Plaintiff then brought the suit which is the basis of this appeal. The District Judge granted complete summary judgment in favor of the Defendants ruling that the stipulation was a binding agreement, clearly unambiguous on its face, which allowed the foreclosure. He also ruled, however, that Plaintiff's loss at the unlawful detainer hearing was not res judicata on his claims in the lawsuit.
 
 
 9
 Plaintiff-Appellant appealed to this court. He aruges that summary judgment was improper in that there were material facts in dispute in the case. Appellant also argues that the District Judge erred when he denied Appellant's motion to amend his complaint for the purpose of adding another defendant. Appellees urge us to affirm the summary judgment but argue as an alternative basis for decision that the District Judge should have ruled that Appellants claims were barred altogether by res judicata.
 
 ANALYSIS
 A. The Stipulation
 
 10
 The language of the parties' stipulation controls this case. The record below clearly shows that the Appellant signed the "stipulation to terminate section 362 automatic stay" of April 11, 1983 (CR 48) of his own free will and without any evidence of fraud. The bankruptcy judge approved the stipulation as written and signed-off on it. We agree with the District Judge that the language of the stipulation was clear.
 
 
 11
 Defendants could foreclose on Plaintiff's property at any time after July 15, 1983 so long as Plaintiff had not made good on all past arrearages and reinstated the loan. Although there is some evidence that Plaintiff attempted to make some of the minimum interim payments called for by the stipulation, by the stipulation's own terms, the payments could not have forestalled foreclosure after July 15. Additionally, there is evidence that Plaintiff did not attempt to make these payments at the location and in the manner called for by the stipulation. Plaintiff also admits that he was never in the position to make up all arrearages and reinstate the loan. Even if he had contemplated curing such arrearages, he never attempted to communicate it to Defendants.
 
 
 12
 Plaintiff-Appellant argues that the stipulation was ambiguous, and further, that he and the Appellees had contemplated other arrangements not described in the agreement.[2] He also argues that his subjective understanding of the agreement differs from the interpretation argued for by Appellees. California's parol evidence rule (Cal.Code of Civ.P. § 1856) excludes such extrinsic evidence except where a contract or one of its terms is ambiguous on its face. Briggs v. Marcus-Lesoine, Inc., 3 Cal.App.2d 207, 212, 39 P.2d 442, 444 (1934). Before parol evidence is admissible the trial court must determine, as a matter of law, that the written contract is ambiguous or uncertain. Schmidt v. Macco Constr. Co., 119 Cal.App.2d 717, 730, 260 P.2d 230, 238 (1953). If the court can determine a document's correct interpretation to a certainty from a mere reading, extrinsic evidence is inadmissible to aid interpretation. Bartel v. Associated Dental Supply Co., 114 Cal.App.2d 750, 752, 251 P.2d 16, 17 (1952). In any case, one may not use parol evidence to contradict the contract in writing. Stafford v. Russell, 117 Cal.App.2d 326, 331, 255 P.2d 814, 817 (1953).
 
 
 13
 More generally, In California when a party with the capacity to read and understand a writing signs it, in the absence of fraud and imposition, he or she is bound by its contents, and is estopped from claiming that its provisions are contrary to his or her intentions or understanding. Dobler v. Story, 268 F.2d 274, 277 (9th Cir.1959); Palmquist v. Mercer, 43 Cal.2d 92, 98, 272 P.2d 26, 30 (1954); Varco-Pruden, Inc. v. Hampshire Constr. Co., 50 Cal.App.3d 654, 660 n. 2, 123 Cal.Rptr. 606, 610 n. 2 (1975); Larsen v. Johannes, 7 Cal.App.3d 491, 501, 86 Cal.Rptr 744, 749 (1970). Since we agree, as a matter or law, that the written stipulation was clearly unambiguous, Appellant was bound by its terms, whatever his unexpressed subjective understanding or intent. We affirm the District court's grant of summary judgment in favor of Defendants.
 
 B. Res Judicata
 
 14
 Appellees argue as an additional basis for summary judgment that Appellants claims are substantially the same as the affirmative defenses and counterclaims that he raised at an unlawful detainer hearing between the parties in Los Angeles County Municipal Court. Based on this argument, Appellees urge that Appellants claims are barred by res judicata. However, due to the fact that an unlawful detainer action is summary in character, and usually only relates to issues that bear directly on the right of immediate possession, a judgment in unlawful detainer usually has very limited res judicata effect, if at all. Vella v. Hudgins, 20 Cal.3d 251, 255, 142 Cal.Rptr. 414, 416, 572 P.2d 28, 30 (1977). Thus, only the "full and fair" litigation of an affirmative defense in an unlawful detainer action--if it is raised without objection, and if a fair opportunity to litigate is provided--will have res judicata effect. Id. at 256-57. In a summary proceeding such as unlawful detainer hearing, such circumstances are uncommon. Id. at 257.
 
 
 15
 In one case the California Court of Appeals allowed a party to use the doctrine of res judicata against another who had litigated similar issues at an unlawful detainer hearing. See Wood v. Herson, 39 Cal.App.3d 737, 114 Cal.Rptr. 365 (1974). In that case, res judicata was appropriate since the unlawful detainer proceeding "was a lengthy, detailed trial, including complete pretrial discovery." On this basis the Court of Appeals concluded that Wood had a "fair adversary hearing" and that res judicata was appropriate. Wood, 39 Cal.App.3d at 745, 747.
 
 
 16
 In Vella v. Hudgins, on the other hand, "[t]he record offered in support of the plea of res judicata [wa]s virtually barren ... for no transcript of the municipal court hearing exists, and no findings of fact or conclusions of law were made, other than a notation in the trial judge's minute order to the effect that Vella had not proved her affirmative defenses." Vella, 20 Cal.3d at 258.
 
 
 17
 In the present case, the only record the court has of the Municipal Court unlawful detainer hearing is a printed form entitled "Minutes and Judgment--Trial--Unlawful Detainer" on which the clerk has filled-in certain blanks that describe the hearing. (Tab 72, Exhibit 16, Appellees' Supplemental Excerpts of the Record). The record does not disclose what non-possessory issues were fully litigated by the parties or how the judge ruled on them. The only evidence that the Appellees offer in support of their position is a deposition excerpt in which the Appellees question Appellant about his arguments at the unlawful detainer hearing. However, based on the sparse record and the cited case law, the District Court correctly ruled that summary judgment on the basis of res judicata was not appropriate in this case.
 
 
 18
 C. The District Court's Denial of Plaintiff's Motion to Amend Complaint to Add a New Defendant
 
 
 19
 Plaintiff-Appellant filed a motion to amend his complaint for the purpose of adding Shearson/American Express Mortgage Co. ("Shearson"), the mortgage servicing agent of Beverly Hills.[3] The District Court denied this motion, ruling that it did not have the independent federal jurisdiction over the new party, that the Plaintiff stated no claim against Shearson, and that any potential claims against Shearson were long-since time-barred (CR 49).
 
 
 20
 Plaintiff moved to add Shearson as a defendant more than five years after he filed his original complaint. Plaintiff knew specifically what Shearson's involvement in the transaction was from the very beginning since Plaintiff himself described Shearson's alleged actions in the first complaint. However, Plaintiff failed to include Shearson as a defendant at that time, and did not think to do so for over five years. Clearly, Appellant was dilatory in presenting the request to add Shearson, and the District Court did not abuse its discretion in denying his motion. Jones v. Bender Welding & Machine Works, Inc., 581 F.2d 1331, 1337-38 (9th Cir.1978) (request to add defendant two years after case filed denied as untimely). Thus, we do not reach the issues of whether the District Court would have had independent jurisdiction, or whether Appellant could have stated a claim against Shearson.[4]
 
 
 21
 AFFIRMED.
 
 
 
 *
 Hon. Edward C. Reed, Jr., Chief United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 If at the end of a fifteen day period the Plaintiff had not cured the interim payment default and had not sought ex parte judicial relief, the Defendants had the right to give notice of foreclosure on the sixteenth day. Although, arguably, Defendants could have invoked this right, they chose not to
 
 
 [2]
 Appellant alleges that the parties had agreed that he would be given time to sell another piece of property and use the proceeds to pay off the arrearages on the property at issue here
 
 
 [3]
 In fact, the Plaintiff attempted to add many new defendants. In this appeal he only challenges the District Court's denial with respect to Shearson
 
 
 [4]
 We note that even had the District Court granted Plaintiff's motion to add Shearson, the grant of summary judgment in favor of Defendants that we affirm here today would have been just as applicable to Shearson as it was to Beverly Hills. Shearson's involvement in the case would have been based on the same facts and the same transaction, and liability would have been predicated on the fact that Shearson was the agent of Beverly Hills